BLACKWOOD IMPROVEMENT COMPANY

*v.*

PUBLIC SERVICE CORPORATION OF NEW JERSEY et al.

[Submitted October 27th, 1919.  Decided December 17th, 1919.]

1. A suit to quiet title is an equitable action of ejectment, and the rights of the parties are to be treated and adjudicated according to the strict rules of common law, one of which is that conditions working a forfeiture are to be construed strictly.

2. Where land was conveyed to a proposed railway company with the condition in the deed expressed that the premises shall revert to the grantor if the grantee "for any reason whatever shall permanently cease to operate and maintain its street railway thereon after having commenced the operation thereof," such premises do not revert when the railroad was never built or operated over the land described in the bill, though it had been built and operated over other lands described in the same conveyance. The recovery of the unused portion by the complainant can only be predicated upon adverse possession for the statutory period.

*91 N. J. Eq.*      Blackwood Imp. Co. *v.* Public Serv. Corp.

On bill, &c.

*Mr. Edward T. Curry,* for the complainant.

*Mr. Frank Bergen,* for the defendants.

BACKES, V. C.

The complainant owns a large tract of land near the village of Blackwood, Gloucester county, which it acquired from the devisee of the late J. Willard Morgan. Morgan had granted, in fee, to the Camden, Gloucester and Woodbury Railway Company, of which he was promoter and president, a strip across the tract thirty feet wide and of fourteen courses, for the purpose of using the same in the building, construction, operation and maintenance of its railway. The deed, after limiting the use to railway purposes, contains this condition:

"It being clearly understood and agreed, however, that this conveyance is made by the said party of the first part and accepted by the said party of the second part upon the express condition, stipulation and agreement that the same is made in consideration of the said party of the second part building, constructing, operating and maintaining its railway in, upon and along the said premises, and if at any time hereafter the said party of the second part, its successors or assigns, for any reason whatever shall permanently cease to operate and maintain its street railway thereon after having commenced the operation thereof, that then and in such case this conveyance and the estate hereby granted shall cease and determine, and the said premises shall revert to the said party of the first part and the heirs and assigns of the said party of the first part as though these presents had never been made."

The railway was duly constructed and has been in operation over eleven of the courses for upwards of ten years. It is, at present, the southerly terminus of the Blackwood extension. Courses 12, 13 and 14, and the further right of way of the company into the village of Blackwood, have not as yet been utilized because it has not been expedient financially. The complainant is about to subdivide its tract into building lots, and the outstanding title in courses 12, 13 and 14 interferes with its plans— that is, the land could be plotted to better advantage if the right of way were out of the way. To rid itself of this obstacle the

complainant filed this bill to quiet the title to the entire tract, especially against the outstanding title of the defendants, upon the theory that the condition upon which the strip is held has been breached and that a forfeiture has resulted. The defendants are: Camden, Gloucester and Woodbury Railway Company, the owner of the fee; South Jersey Gas, Electric and Traction Company, the lessee of the road for nine hundred and ninety-nine years; Public Service Corporation of New Jersey, assignee of the lease; and Public Service Railway Company, the present holder of the lease by assignment, now operating the line as a part of its state-wide system.

Attention is called to the inartificial drafting of the bill. The pleader sets out in detail the complainant's and defendants' titles, and the alleged default upon which the reversion is based, instead of contenting himself with the bare statements required by the statute (*Comp. Stat. p. 5399*) and calling upon the defendants to declare their title. *Fittichauer* v. *Metropolitan Fire Proofing Co., 70 N. J. Eq. 429*. Then, in his effort to include these needless things, he forgot to allege the essential jurisdictional fact of *peaceable* possession of the complainant. No advantage was taken of the omission, presumably, because, the bill was amendable. It will be considered amended. Complainant's counsel was not the solicitor who drew the bill.

It is suggested, rather than urged, that the complainant had no standing to file this bill, because he was not in possession. While the legal title is in the defendant Camden, Gloucester and Woodbury Railway Company, and possession is presumed to follow the title, it appears from the evidence and statements of counsel in open court that, in fact, possession of the tract, including the *locus in quo;* has always been in the complainant and his predecessors. Thus, in possession, the complainant cannot test his right at law by ejectment, and may avail himself of the statutory bill to quiet title. *Oberon Land Co.* v. *Dunn, 56 N. J. Eq. 749.*

The suit is, in effect, an equitable action of ejectment, based upon an alleged reversion resulting from forfeiture. Although it is fundamental doctrine of the court that equity does not assist in the recovery of a forfeiture, and will leave the complain-

ant to whatever remedy the law courts may afford (*Woodruff* v. *Water Power Co., 10 N. J. Eq. 489*), the doctrine is not to be applied in its traditional rigor in case the complainant is without legal remedy, nor where a remedy, essentially legal, is imposed by statute upon equity, as it is by the act to quiet titles. But the privilege thus extended, to sue in equity in such circumstances, is not to be carried beyond the jurisdictional function, and the rights of the parties are to be treated and adjudicated according to the strict rules of the common law. And, at law, forfeitures of vested estates, by breach of conditions subsequent, are no more favored than in equity. There is, however, a difference in treatment. Equity ordinarily, remains passive. The law indulges, but construes such condition strictly, and does not countenance a recovery unless the breach is clearly and unequivocally established.

"Conditions, when they tend to defeat estates, are *stricti juris* and to be construed strictly." *1 Shep. Touch. 133* ¶ *8*. "Conditions subsequent, especially when relied upon to work a forfeiture, must be created by express terms or clear implication, and are construed strictly." *Washb. Real Prop. 447*.

With this guidance, little difficulty is experienced in disposing of the problem submitted. The condition attending the vesting of the fee in the Camden, Gloucester and Woodbury Railway Company, as above quoted, recites the consideration of the conveyance to be the "building, constructing, operating and maintaining its railway in, upon and along the said premises." Nullification of the grant is limited to the happening of a single event, viz., if the grantee "shall permanently cease to operate and maintain its street railway thereon after having commenced the operation thereof." That contingency has not arisen. A failure of the consideration—that is, failure to build the road at all, was not to work a forfeiture, nor was the construction of a part only to result in a reversion of the unused portion of the strip. Abandonment after construction was the conception and is the test of forfeiture. Non-user is not a stipulated breach. The grantee of the strip has not as yet extended the road over the courses in dispute and over its other rights of way into the village of Blackwood because of unprofitableness. That was its

privilege, and refraining did not deprive it of its vested rights, to be enjoyed under more propitious circumstances in the future. Gradual extension is the common experience of railroad development.

A recovery by the complainant of the unused portion of the strip can be predicated only on adverse possession for the statutory period, and that time has not elapsed. If the defendants' title were less in quality than it is, for instance, a mere easement, a recovery for non-user could be had only upon a showing of a continued non-user for the full period of twenty years. *Horner* v. *Stillwell, 35 N. J. Law 307; Shields* v. *Arndt, 4 N. J. Eq. 234; Raritan Water Power Co.* v. *Veghte, 21 N. J. Eq. 463; Dill* v. *Board of Education, 47 N. J. Eq. 421.*

Considerable stress is laid by complainant's counsel upon a letter written in 1914 by the second vice-president of the Public Service Railway Company to one of the complainant's officials, in which he stated that "the Blackwood line is unprofitable. The traffic does not warrant any further extension of that line. Any changes in the layout of your land that you · contemplate may, therefore, be made without regard to us." It is argued that this communication clearly evinces an abandonment of courses 12, 13 and 14. In dismissing the contention, it is enough to say that the document has not the legal force of a deed or release; that it is not a surrender, nor does it operate as an estoppel against the principal of the writer, in the absence of proof of authority; and further, the fee being in the Camden, Gloucester and Woodbury Railway Company, its vested rights cannot be surrendered either by this official or by his principal, the Public Service Railway Company, for whom he presumed to act.

The bill will be dismissed, with costs.